UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**CARROLS CORPORATION,**

    **Plaintiff,**

v.                                                                                CASE NO. 07-10947
                                                                                 HONORABLE DENISE PAGE HOOD

**CAIN RESTAURANT CO.,**

    **Defendant.**

_____/

**MEMORANDUM OPINION AND ORDER**

**I.  INTRODUCTION**

On September 18, 2008, both parties filed motions for summary judgment. Responses and replies have been filed to the motions pending before the Court. A hearing on this matter was held on December 17, 2008.

**II.  STATEMENT OF FACTS**

On March 5, 2007, Plaintiff, Carrols Corporation (Carrols), filed the instant matter against Defendant, Cain Restaurant Company (Cain), alleging that Cain breached nine lease agreements entered into by the parties.

In 1992 Carrols and Cain entered into nine agreements in which Cain, as landlord, leased nine operating Burger King restaurant properties to Carrols, as tenant. All of the properties are located in Michigan, two are located in Jackson, three are located in Kalamazoo, one is located in Portage, and three are located in Battle Creek. Paragraph twenty-six (26) of each of the lease agreements grants Carrols the option to purchase the property from Cain by giving written notice

1

of its exercise of the option at any time after the tenth (10th) anniversary of the lease commencement date.  Paragraph twenty-six (26) also provides that the purchase price "shall be the Fair Market Value (as hereinafter defined) of the Premises as of the date [Carrols] delivers to [Cain] the Option Notice [hereinafter, the "Option Exercise Date"].  *See* Cain's Mot. for Summ. J., Ex. A, Lease at ¶ 26(C)(i).  The appraiser is to determine the fair market value.  *Id.*  Additionally, paragraph twenty-six (26) requires that within ten days after the date that Carrols gives Cain its option notice, the parties were required to choose an appraiser.  *Id.* at ¶ 26(C)(ii).  If the parties cannot agree on the appraiser within the ten day period, then each must choose an appraiser within the next ten days.  *Id.*  The two appraisers are then to select a third appraiser within ten days.  *Id.*  This third appraiser is to determine the fair market value of the property.  *Id.*  Lastly, in the event that one party fails to select an appraiser, the other party's choice will be the appraiser.  *Id.*  Cain is required to deliver "at the closing or thereafter, on demand, all proper instruments for the conveyance . . . ."  *Id.* at ¶ 26(B).

On September 20, 2004, Carrols exercised its option to purchase the 1023 property.  In Carrols' Option Notice, Carrols stated its belief that the fair market value that it was required to pay for the "Premises" did not include the building or other improvements on the land, and that the appraiser should assess the Fair Market Value as such.  *Id.*, Ex. D.  On October 29, 2004, before the parties had completed the appraiser-nomination process, Cain filed an action in this Court against Carrols, case number 04-cv-74239 ("2004 Lawsuit"), requesting a declaration that the term "Premises" within the lease agreement included the land and the building located on the land, and requiring the appraiser to add the value of the building in the valuation appraisal.

In 2006, this Court ruled upon the parties cross-motions for summary judgment.  This Court ruled in favor of Carrols, denied Cain's requested relief, and dismissed the Complaint.  Specifically,

2

the Court held that the term "Premises" did not include the "Building," as such the valuation of the 1023 Property did not include the value of the building located on the property. (*See* case number 04-cv-74239, March 27, 2006 Or. Regarding Report and Recommendation, p. 6)

After this Court's March 27, 2006 Order, Cain filed a Rule 59(e) motion, requesting that this Court provide further declaratory relief because "there potentially remained a dispute as to the property interest to be conveyed by Cain to Carrols." *See* Case No. 04-cv-74239, Dkt. No. 70. Meanwhile, Carrols requested that Defendant proceed with the appraisal process on the 1023 Property. According to Carrols, while Cain agreed to the selection of a neutral appraiser, Cain objected to the appraisal process going forward until after the Court ruled on Cain's pending Rule 59 motion. Carrols further maintains that even after this Court denied Cain's Rule 59 motion, and Cain appealed this Court's judgment, Cain continued to refuse to proceed with the appraisal process. After warning Cain that Carrols would proceed with the appraisal process with another appraiser that it had selected, Cain did not withdraw its objection to the neutral appraiser.

On March 2, 2007, Carrols exercised its option to purchase the remaining eight properties. *See* Carrols' Compl., Ex. 5. On March 5, 2007, Carrols filed the instant action requesting an order from this Court requiring specific performance from Cain to complete the closing and delivery of the deed for the 1023 Property, Count I; a declaration that this Court's ruling in the 2004 Lawsuit applies to the remaining eight leases, which contain identical terms to the lease agreement regarding the 1023 Property, Count II;[1], and damages for Cain's breach of the nine lease agreements, Count III.

---

[1] Carrols also requested in this count, an order requiring Cain to participate in the appraisal, complete the purchase process by delivering the deeds and an order allowing Carrols to withhold or off-set the rent it was continuing to pay on the subject properties.

3

On April 4, 2008, the Sixth Circuit issued its opinion in the 2004 Lawsuit and ultimately agreed with Cain's definition of the term "Premises" in the parties' agreement, that the term referred not only to the land, but also included the building and improvements to the land. *See Cain Rest. Co. v. Carrols Corp.*, No. 07-1458, 2008 U.S. App. LEXIS 7726 (6th Cir. April 4, 2008). Accordingly, this Court set aside its previous judgment in favor of Carrols and granted Cain's motion for summary judgment and entered judgment in favor of Cain on June 27, 2008.

## III.  APPLICABLE LAW & ANALYSIS

### A.  Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is to be entered if the moving party demonstrates there is no genuine issue as to any material fact. The Supreme Court has interpreted this to mean that summary judgment should be entered if the evidence is such that a reasonable jury could find only for the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party has "the burden of showing the absence of a genuine issue as to any material fact." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Lenz v. Erdmann Corp.*, 773 F.2d 62 (6th Cir. 1985). In resolving a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party. *See Duchon v. Cajon Co.*, 791 F.2d 43, 46 (6th Cir. 1986); *Bouldis v. United States Suzuki Motor Corp.*, 711 F.2d 1319 (6th Cir. 1983). But as the Supreme Court wrote in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986):

> [T]he plain language of Rule 56(c) mandates the entry to summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a

> sufficient showing on an essential element of her case with respect to which she has the burden of proof.

To create a genuine issue of material fact, the nonmovant must do more than present "some evidence" of a disputed fact. "If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). Accordingly, a nonmovant "must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact." *Mathieu v. Chun*, 828 F. Supp. 495, 497 (E.D. Mich. 1993) (citations omitted).

### B. The parties' Motions for Summary Judgment

Carrols argues that it is entitled to summary judgment on the Complaint, because Cain materially breached each of the nine lease agreements by refusing to move forward on the appraisal process. Carrols asserts, in the alternative, that even if Cain did not materially breach the nine lease agreements, that Carrols is nonetheless entitled to summary judgment enforcing the contracts as written as of the date that Carrols exercised its options–which would necessarily preclude Cain from receiving and keeping the rental payments that Carrols continues to pay on the properties.

In order for Carrols to state a claim for breach of contract it must establish: (1) that the parties entered into a valid enforceable contract; (2) that the defendant breached the contract; and (3) that the defendant's breach caused a loss to the plaintiff. *Platsis v. E.F. Hutton & Co.*, 642 F.Supp. 1277 (W.D. Mich. 1986); *Pittsburgh Tube Co. v. Tri-Bend, Inc.*, 185 Mich.App. 581 (1990). Carrols argues that it timely exercised its purchase options and chose an appraiser, but Cain failed to choose an appraiser, proceed with the appraisal process, or deliver a deed of conveyance. Carrols also asserts that Cain breached the parties' agreement when Cain filed the declaratory action because paragraph thirty-nine (39) provides that the sole remedy available to Cain if Carrols breaches or

5

threatens breach, is to pursue an injunction.

Carrols maintains that it has been damaged by Cain's actions because Carrols has been forced to continue to pay rent on all of the nine properties, in one instance, the 1023 property, for over four years. As such, Carrols asserts that it is entitled to summary judgment, and an adjustment based on the rental payments it has paid since exercising the option through closing.[2] Carrrols claims that it has paid nearly $1,3,000,000.00 in base rents, as well as $68,000.00 in percentage rent for the year 2007.[3]

Cain counters that it did not breach the parties' agreement, and that Carrols is incorrect in stating that Cain's sole remedy was to seek an injunction. Lastly, Cain argues that this Court should enforce the contracts as written and hold that Carrols is not entitled to an adjustment based on the rental payments it has made since exercising its options to purchase the nine properties.

The Court agrees with Cain that it did not breach the parties' agreement by filing the declaratory action. Paragraph thirty-nine, in its entirety reads:

> 39. INJUNCTION.   In the event of a breach or a threatened breach by [Carrols] of any of its Lease obligations, [Cain] shall have the right to enjoin and restrain the breach and to invoke any remedy allowed by law or in equity, in addition to other remedies provided in the lease.

---

[2] Carrols also argues that Cain is entitled to adjustment interest from the date of the option through closing.

[3] The Court notes that while Carrols submits the declaration of Richard G. Cross, Vice President of Carrol's Real Estate Department, in support of these figures, it is unclear how the $1,3,000,000.00 figure was calculated. The Court cannot find as a matter of law that this is an accurate figure as Carrols only includes spreadsheets evidencing the rental payments (in part projected payments) for the period of September 2008 through August 2009, and January through December 2009. Carrols will need to establish the base and percentage rents paid out from September 20, 2004 through the closing on the 1023 property, and the base and percentage rents paid out from March 2, 2007 through the closing for the remaining properties.

*See* Cain's Mot. for Summ. J., Ex. A, Lease at ¶ 39. While the heading of this paragraph appears to imply that an injunction is the sole remedy available, the paragraph's language indicates that Cain may "invoke any remedy allowed by law or in equity, . . ." *Id.* Further, it is questionable whether, in October 2004, Carrols had breached or threatened a breach of its Lease obligations, a requirement under the paragraph for Cain to seek an injunction.

Cain argues that based on this Court's previous holding in the 2004 lawsuit, Cain did not breach the parties agreement. In the 2004 Lawsuit, Carrols filed a motion to dismiss, arguing that declaratory relief was improper or immature.[4] In denying Carrols' motion to dismiss, this Court held that "this matter is ripe for adjudication, and by granting declarative relief, it will promote the resolution of the parties' dispute." *See* case number 04-cv-74239, March 27, 2006 Or. Regarding Report and Recommendation, p. 1. The Court cannot agree with Cain's interpretation of this Court's Order as the issue of whether or not Cain breached the parties' agreement by filing the declaratory action was not before the Court. However, this Court cannot agree with Carrols' allegation that Cain is in breach of their agreement. Carrols fails to mention exactly how the appraisal process could have proceeded in 2004 when the parties were in disagreement over whether the term "Premises" included the land as improved or referred only to the land as if it were unimproved. As such, the appraiser could not have determined the fair market value of the properties up and until this dispute between the parties was finally resolved.

Cain further argues that Carrols is not entitled to an adjustment because the landlord/tenant relationship continued after Carrols' exercise of the purchase option. Cain argues that Carrols

---

[4] Carrols did not raise the argument in the 2004 Lawsuit that the only remedy available to Cain was an action seeking injunctive relief.

7

reliance on *Glockshine v. Malleck*, 372 Mich. 115, 125 N.W. 2d 298 (1963), is misplaced because the agreement at issue contained the language that "[i]n the event of a purchase by Second Parties under either one of the above options the lease shall terminate." 372 Mich. at 117. In support of this argument, Cain relies on paragraph twenty-six (26), which states:

> The price which [Carrols] agrees to pay, and which [Cain] agrees to accept for the Premises . . . shall be the "Fair Market Value" . . . as of the date [Carrols] delivers to [Cain] the Option Notice (hereinafter, the "Option Exercise Date").

*See* Cain's Mot. for Summ. J., Ex. A, Lease at ¶ 26(C)(I). Cain argues that the provision is clear and unambiguous and nothing in the lease agreements provides that Carrols is entitled to adjustments or set offs. While the language in the parties' contract does not mirror the language used in the contract at issue in *Glockshine*, Carrols' argument is nonetheless supported by the holding in *Glockshine*. In *Glockshine*, the Michigan Supreme Court held that "the exercise of a purchase option by a tenant during the term of his lease automatically terminates the lease." *Id.* at 118 (citing *Rosenthal v. Shapiro*, 333 Mich. 302, 52 N.W. 2d 859 (1952). In *Rosenthal*, the Michigan Supreme Court, held:

> It follows that, when the plaintiff in this case exercised its option to purchase by notice in writing served on the defendant, a complete and absolute contract was created binding upon the plaintiff to buy and the defendant to sell, thereby vesting the equitable ownership of the premises in the plaintiff. After that time the relation of landlord and tenant ceased to exist, and the rights of the parties must be determined upon the basis of a contract to sell and convey on one side and purchase on the other.

*Id.* at 315 (citing *Cities Service Oil Company v. Viering*, 404 Ill. 538, 89 N.E. 2d 392 (1949)).

Similarly, once Carrols exercised its option to purchase, the landlord/tenant relationship ceased to exist and "the rights of the parties must be determined upon the basis of a contract to sell and convey on one side and purchase on the other." *Rosenthal*, 333 Mich. at 315. As such, based

on *Rosenthal*, Carrols is entitled to an adjustment to the purchase price of the nine properties to reflect the rental payments Carrols has made on the 1023 property since the date it exercised its option to purchase, or September 20, 2004, and for the rental payments made on the other eight properties since March 2, 2007.

Cain is correct that the lease agreements should be enforced as written, and Cain shall be entitled to the fair market value of the nine properties on the date that Carrols exercised the options to purchase, September 20, 2004 for the 1023 Property and March 2, 2007 for the remaining eight properties. Cain, however, is not entitled to keep the rental payments that Carrols made subsequent to its option notice, and such rental payments shall be deducted from the price Carrols will pay for the properties, based on the appraiser's determination of the fair market value for each property.[5]

Accordingly, the Court will grant Carrols' Motion for Summary Judgment on Counts I and II of Plaintiff's Complaint, Specific Performance With Regard to the 1023 Property and Declaratory Judgment and Other Relief, respectively.[6]

---

[5] The Court declines to order that the appraisal quote be adjusted by a five percent increase as Carrols suggests, as such an increase is not addressed in the parties' agreement. As discussed above, while the parties' agreement is also silent as to set-offs, the law in Michigan provides that once Carrols exercised the purchase options, the landlord/tenant relationship ceased to exist, entitling Carrols to an adjustment in the purchase price.

[6] Carrols use of the language "this Court's ruling in the 2004 Lawsuit" shall reflect this Court's June 27, 2008 Order and Judgment and the Sixth Circuit's Opinion in favor of Cain. *See* case number 04-cv-74239, Dkt. Nos. 82 and 83.

## IV.	CONCLUSION

Accordingly,

IT IS ORDERED that Carrols' Motion for Summary Judgment **[Docket No.25 , filed September 18, 2008]** is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that Carrols' Motion for Summary Judgment is granted as to Counts I and II.

IT IS FURTHER ORDERED that Carrols' Motion for Summary Judgment is denied as to Count III.

IT IS FURTHER ORDERED that Cain's Motion for Summary Judgment [**Docket No. 24, filed September 18, 2008**] is DENIED.

                                              S/Denise Page Hood  
                                              Denise Page Hood  
                                              United States District Judge

Dated:  September 29, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 29, 2009, by electronic and/or ordinary mail.

                                              S/William F. Lewis  
                                              Case Manager